HAROLD J. BEATTY et ux., appellants, v. W. M. ARMSTRONG, appellee.

No. 48819.

(Reported in 73 N.W.2d 719)

DECEMBER 13, 1955.

Swift & Swift, of Manchester, for appellants.

John A. Cherny, of Independence, for appellee.

PETERSON, J.—This is an action in equity for accounting. Plaintiffs are farmers in the vicinity of Independence, Iowa, and defendant is a realtor in said city. In 1941 plaintiffs experienced financial difficulties. They were not able to secure financing from Waterloo Production Credit Association, with whom they had been doing business, nor from the local bank which had recently been organized. They then entered into an agreement with the defendant to arrange such financing for them, and placed all their property in trust with him to secure the money needed. Defendant executed one note in the inception as trustee to the bank and afterwards plaintiffs executed notes from time to time as to the amounts needed. A written trust agreement was entered into in the inception, but it only covered the original indebtedness, and afterwards the trust was extended under oral agreement to cover the farming operations of plaintiffs for a period of several years. The income from the farm was to be paid on the account until it was fully paid. On February 27, 1946, the defendant told plaintiffs he "would like to straighten up" and that they owed him $635.24. They paid this in the form of delivering a pony to him for $100, and paying the balance in cash. At said time plaintiffs asked for an accounting as to the trusteeship and for their notes and receipts. Defendant stated that he did not have said accounting nor papers ready, but would deliver them to plaintiffs within a short time. Defendant never did render an itemized account to plaintiffs, but in the summer of 1948 gave them a bundle of papers and stated that was everything. Plaintiffs allege it was not all the papers nor notes which they had signed and thereafter they made numerous requests and demands for the missing papers, but never secured them from defendant. In the spring of 1949 plaintiffs went to Security State Bank where the trust account had been maintained and asked the bank for a copy of the ac-

count. They received such copy and then discovered that there were several transactions omitted. The largest one was a note of $1800, and there were several other items to which we will make specific reference hereinafter. Plaintiffs allege that for the first time they discovered that the defendant was guilty of fraud as to the trust affairs. On August 18, 1953, they commenced this action for accounting. Defendant filed motion for dismissal on the ground that plaintiffs' claims were barred by the Statute of Limitations, and also on the ground that full settlement had been made between the parties. The trial court sustained said motion.

Plaintiffs had been residents for many years of Buchanan County, Iowa, and were occupying and farming an eighty (80) acre tract south of Independence in said county. Defendant was a resident of Independence and a realtor by occupation. In addition to being in the real-estate business he was also on the Board of Directors of the bank.

In the fall of 1941 plaintiffs experienced financial reverses and became indebted to numerous creditors, including Waterloo Production Credit Association. They had also become indebted for funeral expenses of recently deceased parents and they owed real-estate taxes on their farm and owed interest on the mortgage on their farm and other accounts to merchants and businessmen in Independence. They applied to Waterloo Production Credit Association for additional funds with which to pay these obligations, but the application was rejected. They applied to Security State Bank at Independence, but said bank had recently been organized and again their application for a loan was rejected. This was the bank of which defendant was a stockholder and director.

The petition is not clear as to whether plaintiffs approached defendant for assistance or whether defendant approached plaintiffs, knowing of their predicament, and offered assistance. At any rate, the parties entered into a written trust agreement on December 8, 1941. According to the terms of this agreement the defendant arranged to secure the amount of money which plaintiffs needed at said time to pay their obligation to Waterloo Credit Production Association, taxes and interest, and other

miscellaneous items, all of which items at said time amounted to $2257.34. As security to defendant for arranging for this money plaintiffs executed a deed conveying their farm to defendant and also executed bill of sale of all personal property which they owned. In the agreement there was no power with reference to the sale of the real estate, but authority was granted to defendant to sell any personal property at such times as he deemed advisable and apply the proceeds on the indebtedness. According to the written agreement defendant was to receive $150 for his services in the matter, but out of this amount he was to pay any attorney fees involved. This sum was to pay for services rendered or to be rendered before the final termination of the matters involved in the trust arrangement.

The first amount needed in accordance with this agreement was secured through a promissory note executed by Wm. Armstrong, trustee for Harold and Ila Mae Beatty to Security State Bank. Said amount was placed to the credit of the trust account at the bank as shown by the bank statement, which is Exhibit F attached to plaintiffs' petition. These items of indebtedness were quite promptly paid, because by April 6, 1942, the full amount represented by the first note had been exhausted.

According to plaintiffs' petition the trusteeship was extended between the parties by oral agreement and under said oral agreement defendant was to continue to handle the financial affairs of plaintiffs. There is no allegation in the petition showing that this extension of trusteeship was made for any specific length of time. It actually continued until February 27, 1946. At said time, defendant claimed plaintiffs owed him $635.24, and this they paid him in the form of delivering a pony to defendant for $100 and making payment of $535.24.

It is the transactions as between the parties and the matter of the actions of defendant as trustee which are in dispute herein. After the oral agreement was entered into other notes were executed by plaintiffs, three of which are set out as exhibits attached to plaintiffs' petition. On July 10, 1942, plaintiffs executed a note for $2600 to defendant. This note was duly credited on the bank account. On July 28, 1943, plaintiffs executed a note to Security State Bank and defendant jointly for $2002.45, which note was duly credited to defendant as

shown by the bank statement. On August 9, 1944, plaintiffs executed a note for $1800 to defendant, and this is the principal item of dispute between the parties. This note does not appear as a credit on the trusteeship bank account. There were apparently other notes executed, which plaintiffs did not receive in the bundle of papers from defendant because they show on the bank account as credits in the trusteeship account, but no reference is made to said notes in plaintiffs' petition.

On February 27, 1946, when plaintiffs paid defendant $635.24, they must have had complete confidence in defendant because without securing an accounting or securing back any papers they paid defendant in the forms as heretofore set out.

The petition alleges that at said time plaintiffs asked defendant for an accounting showing what creditors had been paid and the amounts paid. They also asked for a return of their promissory notes, which they had executed throughout the years and which all had been retired. Defendant stated that he did not have the papers with him, but he would deliver them to plaintiffs within a short time. Plaintiffs allege that they made numerous demands for the return of their papers and for a full accounting as to all moneys handled by defendant on plaintiffs' behalf as trustee and that defendant has completely failed to make an accounting.

In the summer of 1948, after defendant had failed to return the papers to plaintiffs and had failed to make a full accounting, plaintiffs went to the office of defendant and on that occasion defendant gave plaintiffs a package of papers and envelopes wrapped in a bundle, and without going into the matter of the trusteeship or without giving any explanation of what had been done in the premises, defendant placed said package in plaintiffs' hands and stated that everything was there. The petition alleges however that there was no accounting among the papers and there was no return of all notes and papers evidencing moneys paid by defendant for plaintiffs.

In the spring of 1949 plaintiffs went to Security State Bank and demanded a copy of the bank sheet showing the amount of money paid through the bank by defendant for plaintiffs, and the amount of notes which plaintiffs had paid to de-

fendant. The bank furnished plaintiffs with copy of such account, and, under the allegations of the petition, this was the time at which plaintiffs discovered that there were omissions of items in the bank sheet and that there was fraud in the trusteeship transaction. Plaintiffs allege that they discovered at said time that they had paid to defendant considerably more money than defendant had disbursed as trustee on their behalf.

The petition then proceeds to itemize the principal items for which plaintiffs claim that they had not received proper credit from defendant. There were five (5) specific omissions listed. Four (4) of them are of importance in connection with the facts of this case. The first and largest item is a note for $1800, which plaintiffs executed to defendant on August 9, 1944, and which does not appear in the bank statement as a credit to the trusteeship account. Counsel for appellee state in their argument that this was a private transaction apart from the trusteeship, but the fact remains that the bank account was not closed until August 10, 1944, which was the next day after the execution of said note of $1800. Another specific item concerning which plaintiffs make complaint in their petition is that on July 27, 1943, they paid defendant $90 on their indebtedness, and they attach to their petition a receipt in said amount signed by defendant showing that he received said amount as the proceeds from the sale of three hogs. There are some statements on the receipt, which are not too clear, to the effect that $23.60 of said amount was for overdraft and $66.40 was to apply on mortgage note. The fact remains however that in the bank statement this item of $90 was not credited to the account of defendant. A third item was a very small and insignificant item of some seed corn which was returned by plaintiffs to defendant at an agreed sum of $9.05 and for which they were to receive credit on their note indebtedness. No dates are shown with reference to this item, but at any rate it does not appear as a credit in the bank statement. The fourth item is an allegation that plaintiffs paid defendant $650 on March 1, 1944, and that they only received credit on the bank account of $493.30, and that the balance of $156.70 was never credited.

The fifth item is not subject to serious complaint by plaintiffs. It was a deposit made by plaintiffs in the trust account

on November 20, 1943, in the amount of $1482.81. They complain that they only received credit for $914.40, and that $568.41 was marked "to Baden" who was not a creditor. However, in the normal course of business it would seem that plaintiffs received duplicate deposit slip, copy of which they attach to the petition as Exhibit G, when they made the deposit on November 20, 1943. There must have been cognizance, therefore, at said time as to the Baden item because it appears on the deposit slip. However, the first four items above-described clearly do not appear as credits to plaintiffs on the bank statement.

In addition to the deed to the farm which was executed to defendant when the trust agreement was first made and the bill of sale as to all personal property, it appears that on July 10, 1942, plaintiffs executed a chattel mortgage to defendant as trustee covering 37 head of cattle; all of their machinery; 153 head of hogs and 10 head of horses. Because there is no allegation to the contrary in the petition we assume that the farm was deeded back to plaintiffs by defendant and we also assume that by the passage of time and the execution of the above chattel mortgage the bill of sale became of no great force and effect. Plaintiffs allege in their petition that this chattel mortgage has never been released by defendant. In the absence of such release, the trustee did not finally fulfill his obligations as trustee.

There is no question but what defendant came to the aid of plaintiffs at a time when they were in serious financial difficulty. They were not able to make loans from the production association or the bank. Defendant arranged the loan on his own responsibility and at the bank, in which he was a stockholder and director, and their pressing obligations were paid. It is true that in the original written agreement, arrangement was made to pay defendant for his services, but the amount was modest. For this assistance to plaintiffs, defendant is entitled to due credit.

On the other hand, defendant was a businessman engaged in real-estate business and maintaining an office and he was also director of a bank. Plaintiffs were modest farmers. The highest obligation and the first obligation on the part of defendant when the time came for closing of his trusteeship was to deliver to plaintiffs an itemized statement showing all receipts and all

disbursements in the matter of said trusteeship. It is incredible to think that under the circumstances: the existence of a trusteeship; the business experience of parties involved; and the passage of time, that such report was not forthcoming. Yet according to the allegations of the petition, which must be accepted as the truth in connection with dismissal on motion, defendant never rendered an accounting to plaintiffs.

Defendant's motion to dismiss consisted of five divisions. Division I was a motion for more specific statement and in view of the court's ruling as to Divisions II, III and IV same was not ruled upon, and properly so. The petition is poorly drawn and contains too many conclusions and pleads too much specific evidence. (The petition was not drawn by attorney of record in this court.) However, as a matter of an action in equity for an accounting, the fundamental matters necessary are included therein. Divisions II and III of the motion are in the nature of a motion to dismiss because the action is barred by Statute of Limitations. Division IV is a motion to dismiss on the basis that the petition affirmatively pleads an account stated, and that this constitutes settlement in full. Division V is a motion to strike, which, in view of the action of the court on Divisions II, III and IV, was properly not acted upon. The court sustained Divisions II, III and IV of the petition.

While there are various propositions and counterpropositions set forth in appellants' and appellee's brief and argument, there really are only three legal propositions involved in the case.

■ I. The rule is well recognized that defendant by its motion to dismiss admits the truth of such allegations in plaintiffs' petition as are well pleaded.

This rule has been approved many times by this court and several times recently. In case of Gates v. City of Bloomfield, 243 Iowa 671, 674, 53 N.W.2d 279, 280, the court stated as follows: "Defendant City of Bloomfield filed a motion to dismiss the petition as against it, which the trial court sustained on the ground: 'Because the enactment of the ordinances was within the governmental functions of the city, the defendant city was not liable for any damages sustained by plaintiff as a direct or indirect result thereof * * *.' Plaintiff has appealed. In

the consideration of such a motion, well pleaded, relevant and issuable facts are deemed true." It has been sustained in two more recent cases. Eittreim v. State Beer Permit Board, 243 Iowa 1148, 1150, 53 N.W.2d 893, and Hartford Accident & Indemnity Co. v. O'Connor-Regenwether Post No. 3633, V.F.W., 247 Iowa 168, 173, 73 N.W.2d 12, 14.

Counsel for appellee does not dispute this principle and cites no cases to the contrary. He does claim that there were not sufficient allegations in the petition to constitute pleading of an action for accounting. We hold otherwise. The cases he cites are on this point and, therefore, are not applicable.

In this accounting case in equity, while the petition is poorly drawn, as above stated, we find that there are sufficient relevant and material facts alleged which, on the basis of being considered the truth, should grant to plaintiffs the right to present their cause of action on its merits.

II. The cause of action was not barred until five (5) years after plaintiffs discovered the fraud or in the exercise of reasonable care should have discovered same.

On the basis of the allegations of the petition, plaintiffs did not actually discover the fraud of defendant until the spring of 1949, when plaintiffs demanded and secured from Security State Bank a copy of the bank sheet showing the amount paid through the bank by defendant for plaintiffs. This date was within five years from the commencement of plaintiffs' action on August 18, 1953. This action, therefore, was not barred by the Statute of Limitations when considered from the angle of discovery of fraud.

Section 614.1 of the Code, subsection 5, provides as follows: "Those founded on unwritten contracts, those brought for injuries to property, or for relief on the ground of fraud in cases heretofore solely cognizable in a court of chancery, and all other actions not otherwise provided for in this respect, within five years, except as provided by subsection 9."

Section 614.4 of the Code of Iowa provides as follows: "In actions for relief on the ground of fraud or mistake, and those for trespass to property, the cause of action shall not be deemed to have accrued until the fraud, mistake, or trespass complained of shall have been discovered by the party aggrieved."

This position has been approved repeatedly by this court. One of the leading cases in this field is Higbee v. Walsh, 229 Iowa 408, 294 N.W. 597.

The five-year limitation is the one which is effective. Counsel for plaintiffs argue the ten-year limitation as to written contracts is effective. The ten-year limitation is not effective because the written contract between the parties only pertained to the original loan of $2257.34, which was secured by defendant as trustee from Security State Bank and from which the urgent and immediate indebtedness of plaintiffs was paid. The extension of the trusteeship to cover the receipts and disbursements in the matter of farming operations. extending from March of 1942 until February 27, 1946, when the trusteeship relationship was closed, was carried on under oral agreement as between the parties. All matters complained of are under the oral agreement.

In connection with the commencement of the running of the Statute of Limitations we must also consider the question of whether or not there was a time when plaintiffs should, in the exercise of ordinary care, have known that defendant was guilty of fraud. Was there some definite date between February 27, 1946 and August 18, 1948, when plaintiffs should have known that defendant was guilty of fraud in connection with the trusteeship affairs? The latter date is five years before the commencement of this action.

According to the allegations of plaintiffs' petition, which must be taken for the truth for the purposes of the consideration of this proceeding, defendant stated on said date of February 27, 1946, that he did not have the papers with him, but he agreed to deliver them to plaintiffs together with an accounting within a short time. Plaintiffs then made numerous demands for the return of their papers and full accounting as to all moneys handled by defendant on plaintiffs' behalf, and defendant failed and refused to do so and still had failed to give a complete accounting and a return of all papers at the time of the commencement of this action. He did deliver some papers to plaintiffs in the summer of 1948, but not all of them. While it is true that plaintiffs were slow in pressing their claim and start-

ing action against defendant, yet the complete record shows that they had confidence in defendant up until the spring of 1949 when they received the bank statement. We hold that there is no specific point back of the spring of 1949 when plaintiffs can be definitely charged with the obligation to start an accounting action, which would mean that there is no point within said period that the Statute of Limitations started to run.

There is also involved in this case, to a certain extent, the element of fraudulent concealment. This theory has been considered by this court in many cases. Findley v. Stewart, 46 Iowa 655; Smith v. Middle States Utilities Co., 224 Iowa 151, 275 N.W. 158.

A clear statement of this principle is set out in the case of Higbee v. Walsh, supra, page 423 of 229 Iowa, page 605 of 294 N.W., as follows: "Where a confidential or fiduciary relationship is present, the requirement that affirmative acts of concealment be alleged and proven is supplied by mere silence and diligence in discovering the fraud complained of is, likewise, greatly relaxed. In such cases, by virtue of the duty existing, because of such relationship, to reveal to the cestui que trust all facts which might affect his interest, the suppression or concealment of such facts by mere silence constitutes a concealment of the cause of action. We so held in Wilder v. Secor et al., supra [72 Iowa 161, 163, 33 N.W. 448, 449, 2 Am. St. Rep. 236], in which case we said: 'As plaintiff had the right to rely upon defendants to communicate the facts of the case to him, and, as they were under obligation to communicate them, they cannot be permitted to say that he might have discovered the existence of the cause of action at an earlier date than he did by an examination of the records * * *.' "

The rule is also approved in Faust v. Hosford, 119 Iowa 97, 93 N.W. 58, and Caffee v. Berkley, 141 Iowa 344, 118 N.W. 267.

In the case of Vertman v. Drayton, 223 Iowa 380, 383, 272 N.W. 438, 439, the court stated as follows: "Because of the fiduciary relationship existing between the parties, it was the duty of the defendant to act in the highest good faith and for the best interest of the appellant. Defendant was under a legal duty to fully and fairly disclose all the facts within his knowl-

edge relative to the subject matter of the relationship and give to the appellant all information that would have tended to influence her conduct. The violation of this duty was a fraud on the plaintiff. The appellant was entitled to assume that the defendant would be loyal and faithful to her interests until she was advised that he was not worthy of her confidence and she was not bound to presume that he would defraud her."

From the face of the petition it appears that by failure to deliver to plaintiffs an itemized accounting of all transactions between the parties, defendant concealed the existence of any irregularity and fraud which might be present in the trust relationship. Furthermore, by his continued promises to furnish such account, and then neglect to do so, he greatly relaxed the obligation on plaintiffs to start a proceeding.

III. Did the payment made by plaintiffs to defendant on February 27, 1946, of $635.24, in property and in money, constitute a settlement in full as between the parties as to all trusteeship matters?

The fourth division of defendant's motion to dismiss is based on the premise that plaintiffs plead an account stated, with payment and settlement in full on the basis thereof, acknowledged and admitted. In appellants' reply brief they allege that the record does not show that the pony was delivered or the $535.24 paid by plaintiffs to defendant. This argument is wrong because in paragraph 10 of the petition plaintiffs allege that they paid said amount to defendant on February 27, 1946. However, in connection with the payment of said amount, plaintiffs demanded an accounting from defendant as to his trusteeship. He had apparently handled for them over $12,000 and they were entitled to receive a statement showing the items which came into his hands, and to whom and for what they were paid. Defendant had also kept their notes, which they had retired from time to time through the years and he had receipts for various items which he paid. In connection with the payment to defendant of said amount on February 27, 1946, they demanded such accounting and such papers and defendant stated he did not have them with him, but he would deliver them to plaintiffs within a short time. He never did make an accounting. He

did nothing until the summer of 1948 except to make promises. Then he delivered a part of the papers, wrapped up in a bundle. Defendant stated that everything was there, but when plaintiffs examined their papers they found that some notes were missing and that there was not a complete listing of creditors that defendant had paid, as trustee. Plaintiffs then again made numerous requests and demands on defendant for the missing papers, but defendant never did produce same. It was then that plaintiffs went to Security State Bank and secured a copy of the trusteeship account as far as the banking records showed such account, and it was then they discovered the alleged fraud on the part of defendant of failing to give them credit for the items heretofore outlined. There was associated with the payment of the money by plaintiffs to defendant an obligation on the part of defendant to deliver an itemized statement showing that the balance due him was $635.24, if this was correct. This he promised to do, but never did. He never released the chattel mortgage against plaintiffs' personal property.

In 1 C. J. S., Accounting, section 29, pages 661, 662, we find the following statement: "On the other hand it has been held that, where a prima-facie right to an accounting exists, the fact that, from time to time, certain settlements of account were made between the parties will not prevent an accounting." We further find in section 38a(5), page 671, the following statement: "Plaintiff must, as a general rule, allege facts sufficient to show that there is something due him from defendant, although such allegation may not be necessary where an accounting is sought from a trustee * * *; but the amount due need not be stated, at least where that is a matter peculiarly within the knowledge of defendant and not within plaintiff's knowledge."

Applying this theory to this case it would mean that plaintiffs are not obligated to state that defendant owes them a certain amount of money. The fact that plaintiffs paid defendant a certain amount on a certain date is not conclusive under the circumstances. In their action for an accounting plaintiffs have the right to state an indefinite claim and, in view of the trusteeship, defendant is obligated to account for the money which came into his hands.

The cases cited by counsel for appellee in connection with this division of the motion to dismiss are not applicable. Appellee's proposition on the matter is based on the absence of fraud or mistake, in case of settlement of an account, and in the petition for accounting herein plaintiffs allege fraud.

In view of the confidential relationship between the parties in connection with this trusteeship and the delinquency on the part of defendant with reference to report and return of papers and failure to release mortgage, we hold that the payment of the money by plaintiffs to defendant on February 27, 1946, did not constitute a settlement in full between the parties. It was not a finality. Division IV of defendant's motion to dismiss should not have been sustained.

This case is, therefore, remanded for trial on the merits of the case, and the decision of the court in sustaining Divisions II, III and IV of defendant's motion to dismiss is hereby reversed.—Reversed.

All JUSTICES concur.